# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CITY AND COUNTY OF SAN FRANCISCO, et al.,

Plaintiffs-Appellees,

v.

JEFFERSON B. SESSIONS, III, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the Northern District of California

## REPLY BRIEF FOR APPELLANTS

CHAD A. READLER
  *Acting Assistant Attorney General*

ALEX G. TSE
  *Acting United States Attorney*

MARK B. STERN
DANIEL TENNY
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7256*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-7823*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ............................................................................... 1

ARGUMENT ............................................................................................................. 3

I.  Plaintiffs' Challenge to the Executive Order Does Not Present a
    Justiciable Controversy ................................................................................... 3

    A.  Even Assuming that the Executive Order Were Susceptible to
        Plaintiffs' Reading, Plaintiffs Have Not Identified a Ripe
        Controversy .......................................................................................... 3

    B.  Plaintiffs Provide No Basis for Setting Aside the Government's
        Consistent Understanding of the Executive Order ................................... 5

II. Plaintiffs Provide No Basis for a Nationwide Injunction ................................... 10

CONCLUSION ......................................................................................................... 18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Arizona Christian Sch. Tuition Org. v. Winn*,
563 U.S. 125 (2011) .......................................................................................... 12

*Bell v. City of Boise*,
709 F.3d 890 (9th Cir. 2013) ............................................................................ 4

*Bresgal v. Brock*,
843 F.2d 1163 (9th Cir. 1987) ..................................................................... 13, 15

*City of Chelsea v. Trump*,
No. 17-10214 (D. Mass. filed Feb. 8, 2017) ................................................... 15

*Colwell v. Department of Health & Human Servs.*,
558 F.3d 1112 (9th Cir. 2009) ......................................................................... 4

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
92 F.3d 1486 (9th Cir. 1996) ..................................................................... 11, 13

*Hawaii v. Trump*,
878 F.3d 662 (9th Cir. 2017), *cert. granted*,
2018 WL 324357 (U.S. Jan. 19, 2018) ........................................................... 14

*Hills v. Gautreaux*,
425 U.S. 284 (1976) ........................................................................................ 14

*Lewis v. Casey*,
518 U.S. 343 (1996) ........................................................................................ 12

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
638 F.3d 644 (9th Cir. 2011) ..................................................................... 12, 13

*LSO, Ltd. v. Stroh*,
205 F.3d 1146 (9th Cir. 2000) ......................................................................... 3

*M.R. v. Board of Sch. Comm'rs of Mobile Cty.*,
286 F.R.D. 510 (S.D. Ala. 2012) .................................................................... 15

*McKenzie v. City of Chicago*,
  118 F.3d 552 (7th Cir. 1997) ...................................................................... 14

*Missouri v. Jenkins*,
  515 U.S. 70 (1995) ..................................................................................... 14

*Municipality of Anchorage v. United States*,
  980 F.2d 1320 (9th Cir. 1992) ...................................................................... 4

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*,
  402 U.S. 1 (1971) ....................................................................................... 14

*Thomas v. Anchorage Equal Rights Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) .................................................................. 3, 5

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017) ................................................................................ 11

*Trump v. International Refugee Assistance Project*,
  137 S. Ct. 2080 (2017) ........................................................................... 11, 12

*United States v. Mendoza*,
  464 U.S. 154 (1984) .................................................................................... 16

*Washington v. Trump*,
  847 F.3d 1151 (9th Cir. 2017) ..................................................................... 14

**Statutes:**

28 U.S.C. § 511 ................................................................................................. 9

**Other Authorities:**

Attorney General, Memorandum for All Department
  Grant-Making Components (May 22, 2017) .................................................. 8

Executive Order No. 13,768, 82 Fed. Reg. 8799 (2017) ..................... 6, 7, 9, 10

## INTRODUCTION AND SUMMARY

**1.** Plaintiffs tilt at windmills. The President issued an Executive Order that plaintiffs interpreted as endangering their receipt of a variety of federal funds. At the preliminary injunction hearing, the government unambiguously disavowed plaintiffs' interpretation. The district court believed that the express representation of government counsel was insufficient. The Attorney General then proclaimed the same understanding as that already presented to the district court.

Plaintiffs do not urge that the Executive Order as understood by the Attorney General violates the Constitution. They argue, instead, that the Order must be read as directing government agencies to withhold funds in a manner not authorized by law; that, absent an injunction, government agencies would implement the order against them in this manner; that they therefore have standing; that the controversy is ripe; and that they are entitled to an injunction.

It is axiomatic that principles of standing and ripeness preclude adjudication of abstract controversies, and courts carefully scrutinize every pre-enforcement challenge to a statute or regulation to ensure that each presents a concrete controversy. The Executive Order is not self-executing, and no agency has ever suggested that it would take the type of action posited by plaintiffs. Plaintiffs cite no instance in which the requirements of standing and ripeness have been satisfied where the government has made clear not only that it will not take the enforcement actions plaintiffs hypothesize, but also that the challenged provision would not authorize such actions.

Even if the Executive Order were susceptible to plaintiffs' reading, plaintiffs would thus have failed to demonstrate standing, ripeness, and an entitlement to injunctive relief.  But the Attorney General's understanding and the government's repeated representations to the district court are fully consonant with the Executive Order, which does no more than provide that the Attorney General and the Secretary of Homeland Security shall, "in their discretion and to the extent consistent with law," require compliance with 8 U.S.C. § 1373 as a condition on grants.  Plaintiffs cannot reconcile their position with the language of the Order.  And they certainly cannot demonstrate that the government's own consistent understanding of the Order is impermissible.  This Court should decline plaintiffs' invitation to resolve hypothetical controversies and to affirm an injunction to forestall wholly hypothetical injuries.

**2.**  Plaintiffs likewise provide no basis, even if an injunction were appropriate, for a nationwide injunction.  Plaintiffs do not even attempt to demonstrate that such a broad injunction is necessary to provide them complete relief.  Both Article III and equitable considerations preclude injunctive relief that is entirely unnecessary to the parties before the court.  And plaintiffs have not employed the class-action mechanism, which could permit them to seek relief on behalf of parties not before the court.  There is no basis for a broad injunction that precludes the government from litigating this issue against other parties without providing any of the protections of the class-action procedure.

# ARGUMENT

## I. Plaintiffs' Challenge to the Executive Order Does Not Present a Justiciable Controversy

### A. Even Assuming that the Executive Order Were Susceptible to Plaintiffs' Reading, Plaintiffs Have Not Identified a Ripe Controversy

Plaintiffs misunderstand the prerequisites for a pre-enforcement challenge. In determining whether a plaintiff can properly challenge a provision of law that has not been enforced against it, this Court considers three factors: "[W]hether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute." *Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). Here, the government has not, of course, issued "a specific warning or threat to initiate proceedings," and there is no "history of past prosecution or enforcement under the challenged" Executive Order. *Id.* Nor can plaintiffs contend that their suits fall into the narrow category of cases that apply a relaxed standard for pre-enforcement standing. *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155-56 (9th Cir. 2000). This Court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas*, 220 F.3d at 1138.

Similarly, plaintiffs have articulated no concrete plan to violate any provision of the Executive Order. Nor could they, since the Executive Order imposes no obligations that did not exist under prior law. Thus, even if the Executive Order were susceptible to plaintiffs' reading, plaintiffs would fail to present a justiciable controversy.[1]

Plaintiffs underscore the error of their analysis by relying on *Bell v. City of Boise*, 709 F.3d 890 (9th Cir. 2013), for the proposition that the government's consistent interpretation of the Executive Order amounts to "voluntary cessation of concededly illegal action." Santa Clara Br. 37. In *Bell*, the plaintiffs had "all been cited or arrested for violating one or both of the local ordinances at issue on appeal." *Bell*, 709 F.3d at 893. Here, by contrast, the government has taken no enforcement action, and plaintiffs do not contend otherwise. There is no unlawful conduct to cease, and the government is not urging that the case is moot; rather, there was no unlawful conduct to begin with.

Plaintiffs highlight the abstract nature of this litigation when they refer to other "ongoing litigation challenging the constitutionality of Defendants' attempts to

---

[1] In the related context of an agency document that, according to plaintiffs, impermissibly binds a federal agency, this Court has applied principles of ripeness and held that where ambiguity exists, judicial action should await a concrete application of the purported rule. *See, e.g.*, *Colwell v. Department of Health & Human Servs.*, 558 F.3d 1112, 1128 (9th Cir. 2009); *Municipality of Anchorage v. United States,* 980 F.2d 1320, 1324-25 (9th Cir. 1992).

impose compliance with Section 1373 as a condition of several federal grants." Santa Clara Br. 26 n.13. And, as Santa Clara recognizes, "[t]he question of which federal grants may be withheld under what circumstances is not a simple one." Santa Clara Br. 28. For that reason, the Attorney General and the Secretary of Homeland Security would have to consider carefully which grants might appropriately be conditioned on compliance with 8 U.S.C. § 1373. Plaintiffs would then, of course, be entitled (after exhausting administrative remedies) to challenge any actual efforts by the federal government to withhold grant funding based on failure to comply with 8 U.S.C. § 1373, and a court reviewing such a decision would undertake its inquiry in the context of a concrete controversy. As matters stand, however, the government has never sought to justify any grant condition by reference to the Executive Order, and plaintiffs' suits improperly invite this court to "declare rights in hypothetical cases." *Thomas*, 220 F.3d at 1138.

## B. Plaintiffs Provide No Basis for Setting Aside the Government's Consistent Understanding of the Executive Order

In any event, plaintiffs are quite wrong to insist that the Executive Order can only be read as an unambiguous mandate to withhold many (unspecified) categories of federal funds. The only sentence of the Executive Order that directs any federal official to withhold grant funding states that "the Attorney General and the Secretary [of Homeland Security], in their discretion and to the extent consistent with law, shall ensure that jurisdictions that willfully refuse to comply with 8 U.S.C. 1373 (sanctuary

5

jurisdictions) are not eligible to receive Federal grants, except as deemed necessary for

law enforcement purposes by the Attorney General or the Secretary." Executive

Order No. 13,768, § 9(a), 82 Fed. Reg. 8799, 8801 (Jan. 25, 2017) (EO) [ER 189].

There should be no dispute that this provision applies only to jurisdictions that

willfully refuse to comply with 8 U.S.C. § 1373; that it is directed only to the Attorney

General and the Secretary of Homeland Security rather than to other federal officials;

and that it directs that action be taken only to the extent consistent with law.

Disregarding the terms of the Order, plaintiffs instead attempt to frame the

issue before this Court by reference to an Executive Order that does not exist. For

example, the City of Santa Clara declares: "Section 9(a) is a categorical command to

the Attorney General and the DHS Secretary to 'ensure that [sanctuary jurisdictions]

*are not eligible to receive Federal grants.*'" Santa Clara Br. 20-21 (Santa Clara's emphasis).

Plaintiff's partial quotation omits crucial language. As discussed, Section 9(a) in fact

provides that the Attorney General and the Secretary of Homeland Security, "*in their*

*discretion and to the extent consistent with law,* shall ensure that jurisdictions that willfully

refuse to comply with 8 U.S.C. 1373 (sanctuary jurisdictions) are not eligible to receive

Federal grants, except as deemed necessary for law enforcement purposes by the

Attorney General or the Secretary." EO § 9(a) [ER 189] (emphasis added). The

Order is not "categorical." It directs the Attorney General and the Secretary to use

their discretion and to act only as "consistent with law." *Id.* Inasmuch as Santa Clara

repeatedly (and mistakenly) accuses the government of "rewriting" the Order (Santa

Clara Br. 27, 30, 33, 35), the County might have wished to avoid such evident rewriting itself.

Having carved out crucial language from the Order, Santa Clara then declares that the only exception to its remaining "categorical language" is the provision at the end of section 9(a), which provides that the Order does not apply to grants "deemed necessary for law enforcement purposes." EO § 9(a) [ER 189]. From this mistaken premise, the County then argues that "Section 9(a) thus makes clear that President's directive applies, at a minimum, to all 'Federal grants' that do not fall within this exception." Santa Clara Br. 21. "Indeed," the County goes on, "that Section 9(a) includes a specific exception indicates that no other exceptions were contemplated." *Id.* This argument might make some sense if the County's excerpted quotation of the Order were, in fact, its full text. As is, Santa Clara's invocation of principles of *expressio unius* simply disregards the critical language that the County excised from the Order.

Later in its brief, the County implicitly attempts to justify its excision of the language "in their discretion and to the extent consistent with law" by repeatedly characterizing it as "boilerplate." Santa Clara Br. 26, 27, 30, 31. It is wholly unclear why this language should be regarded as "boilerplate." Nor is it clear what significance the designation is intended to have: "boilerplate" language has no less effect than any other term. To similar effect, San Francisco argues that "to give effect to these savings clauses would erase the rest of the Order's text." San Francisco Br. 14. That is plainly not the case: as properly interpreted, the Executive Order operates,

like many other Executive Orders, as a directive to federal agencies to exercise their existing authority to carry out the President's policy directive. *See* Gov't Opening Br. 25-26. Even more to the point, however, San Francisco recognizes that the Court can adopt its understanding of the Executive Order only by failing "to give effect to" critical language. San Francisco Br. 14.[2] And plaintiffs' assertion that the Court should misread the plain text of the Executive Order because executive officials will similarly misread it in light of various public statements, San Francisco Br. 11-12; Santa Clara Br. 24-25, ignores the central fact that the only executive official to have interpreted the Order has specifically rejected plaintiffs' tortured reading.

Santa Clara provides no basis at all for its suggestion that a directive to two Cabinet officials concerning their administration of federal grants would apply to grants over which those two officials have no authority. Santa Clara Br. 21-22. Santa Clara suggests that the Attorney General could instruct the Secretary of Agriculture to withhold a grant in the exercise of his general authority to "give his advice and

_____

[2] San Francisco compares the phrase "to the extent consistent with law" to clauses that sometimes appear in city ordinances establishing sanctuary policies. San Francisco Br. 14. In that context the federal government has raised questions about whether city officials are actually applying those provisions in a way that would alleviate the federal government's concerns about the underlying ordinances. Here, in contrast, the nation's chief law enforcement officer, charged with administering the Executive Order, has interpreted it in a manner consistent with the Order's text and in keeping with the stated policy goals. Attorney General, Memorandum for All Department Grant-Making Components (May 22, 2017) (AG Mem.) [ER 184]. Plaintiffs could challenge whether any future action taken pursuant to the Order is consistent with law. As noted, plaintiffs cite no decision finding a pre-enforcement facial challenge to be ripe in such circumstances.

opinion on questions of law when required by the President," 28 U.S.C. § 511. Santa Clara Br. 21-22. It is entirely unclear what sort of legal opinion Santa Clara contemplates, and, of course, the Attorney General has already given his opinion on the scope of the Executive Order.

Plaintiffs are on no firmer ground when they attempt to rely on language that does not bear on the authority to withhold federal funds. They point out that, in a separate provision, "the Director of the Office of Management and Budget is directed to identify '**all** Federal grant money that **currently** is received by any sanctuary jurisdiction.'" San Francisco Br. 9-10 (quoting EO § 9(c) [ER 189]) (San Francisco's emphasis); *see also* Santa Clara Br. 22. There is nothing unconstitutional about that provision, which plaintiffs do not challenge. It is unremarkable that the President would direct an information-gathering exercise that may be broader than the operative provisions of this Executive Order. To the extent that this provision is relevant, it only underscores the more limited scope of the provision that is actually at issue.

San Francisco does not advance its argument by noting that the Executive Order directs the Attorney General to "take appropriate enforcement action against any entity that violates 8 U.S.C. 1373, or which has in effect a statute, policy, or practice that prevents or hinders the enforcement of Federal law." EO § 9(a) [ER 189]; San Francisco Br. 13. That provision does not direct anyone to withhold grant funding, and is limited to "appropriate enforcement action" as determined by the Attorney General.

Plaintiffs fare no better in pointing out that other provisions of the Executive Order might apply to a broad category of jurisdictions. San Francisco Br. 10, 13. The relevant point is that the directive related to grant eligibility explicitly applies only to "jurisdictions that willfully refuse to comply with 8 U.S.C. § 1373." EO § 9(a) [ER 189]. It does not apply, as San Francisco suggests, to "cities that do not comply with ICE's detainer requests," San Francisco Br. 10, except to the extent those detainers implicate the sharing of "information regarding immigration status" pursuant to § 1373; such cities are mentioned in a separate reporting requirement that, as San Francisco admits, merely "requir[es] the Secretary to compile weekly lists of jurisdictions that have not honored detainers," *id.* at 13 (citing EO § 9(b) [ER 189]).

The provision requiring the compilation of weekly lists, which also is neither challenged here nor subject to plausible challenge, does not create "a basis for denying funding pursuant to §§ 2(c) and 9(a)," San Francisco Br. 13. Neither section 2(c) nor section 9(a) refers to the provision requiring weekly lists; still less do they direct the withholding of grant funding for jurisdictions that do not honor detainers. Rather, section 2(c) does not have any operative effect at all (it merely states "the policy of the executive branch," EO § 2(c) [ER 187]), and section 9(a), as noted, specifically defines the set of jurisdictions to which it applies.

## II. Plaintiffs Provide No Basis for a Nationwide Injunction

Plaintiffs do not suggest that a nationwide injunction is necessary to provide them with complete relief. They likewise do not establish that they have standing

to seek injunctive relief on behalf of third parties across the country, nor have they chosen to employ the procedural mechanism—a class action—that could permit them to do so. These considerations end the matter: this Court has repeatedly recognized that any injunction must be "no broader than necessary to provide complete relief to the named plaintiffs," *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1496 (9th Cir. 1996).

Plaintiffs insist that there are no Article III constraints on the scope of injunctive relief a district court may order. Santa Clara, for example, argues that because it has standing to pursue its claims and to seek an injunction, and because the district court's injunction "is aimed at remedying *the County's* constitutional injuries," the injunction comports with Article III regardless of its breadth. Santa Clara Br. 46 (emphasis in original). But Article III forbids this conferral of standing "in gross." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). While plaintiffs might be entitled to an injunction if they succeed on the merits and demonstrate a risk of irreparable harm, that entitlement would not confer standing on plaintiffs to seek an injunction on behalf of every other state and municipality nationwide.

Santa Clara erroneously urges that the Supreme Court *sub silentio* endorsed injunctions that sweep far broader than necessary to remedy a particular plaintiff's injury in *Trump v. International Refugee Assistance Project*, 137 S. Ct. 2080, 2087-89 (2017) (per curiam). Santa Clara Br. 46-47. The Supreme Court's opinion in that

case granting a partial stay says nothing about the appropriateness of nationwide injunctions or the scope of the injunction necessary to remedy the plaintiffs' harms; the Court was under no obligation, in a discretionary assessment of whether a stay was appropriate, to reach every issue, and indeed emphasized its discretion in balancing the equities. *International Refugee Assistance Project*, 137 S. Ct. at 2087. Santa Clara's attempt to draw meaning from this silence runs squarely into the Supreme Court's admonition that "the existence of unaddressed jurisdictional defects has no precedential effect." *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996); *accord Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144-45 (2011).

Santa Clara likewise errs by arguing that the distinction between a facial and an as-applied challenge alters the scope of a district court's authority. Santa Clara Br. 41. A ruling that a statute or regulation is facially illegitimate is a legal determination that may benefit other parties as precedent. That legal determination, however, says nothing about the appropriate relief to grant a particular prevailing plaintiff. Thus, in *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644 (9th Cir. 2011), this Court agreed with the plaintiff that a Department of Health and Human Services regulation was arbitrary and capricious, *id.* at 661, but reversed the district court's determination that "the facial invalidity of the . . . regulation" permitted a nationwide injunction, in large part because an injunction limited to the plaintiff "would have afforded the plaintiff complete relief," *id.* at

665.

Indeed, the cases on which plaintiffs seek to rely emphasize that injunctions may extend beyond the plaintiffs only when necessary to afford the litigants complete relief. For example, plaintiffs rely on *Bresgal v. Brock*, 843 F.2d 1163, 1169 (9th Cir. 1987), for the proposition that "[t]here is no general requirement that an injunction affect only the parties in the suit." San Francisco Br. 30; Santa Clara Br. 41. Plaintiffs omit the portion of the opinion that is relevant here: "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown," but in other situations "an injunction is not necessarily made over-broad by extending benefit or protection to persons other than prevailing parties in the lawsuit—even if it is not a class action—*if such breadth is necessary to give prevailing parties the relief to which they are entitled.*" *Bresgal*, 843 F.2d at 1170-71 (emphasis in original). Thus, in *Bresgal*, this Court upheld an injunction providing "in effect nationwide relief" not because that is the usual remedy in administrative law cases, as San Francisco argues (San Francisco Br. 34), but because no narrower remedy could be crafted. *See Bresgal*, 843 F.2d at 1171 ("In this case the district court could hardly require enforcement . . . on anything other than a nationwide basis."); *see also Easyriders*, 92 F.3d at 1501-02 (upholding statewide injunction against the California Highway Patrol where "the plaintiffs would not receive the complete relief to which they are entitled without statewide application of the injunction"). Similarly, plaintiffs cite multiple school

desegregation cases, paradigmatic examples of cases where any remedy for the plaintiffs will necessarily benefit or affect third parties. *See Missouri v. Jenkins*, 515 U.S. 70, 88 (1995); *Hills v. Gautreaux*, 425 U.S. 284, 293-94 (1976); *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971); *see also McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) (discussing and distinguishing school desegregation cases).

In this Court's other decisions relied on by plaintiffs, the Court concluded that broad relief was necessary to provide full relief to the plaintiffs in light of the particular nature of their injuries and claims. *See Hawaii v. Trump*, 878 F.3d 662, 701 (9th Cir. 2017) (per curiam) ("[A] nationwide injunction was necessary to give Plaintiffs a full expression of their rights."), *cert. granted*, 2018 WL 324357 (U.S. Jan. 19, 2018) (No. 17-965); *Washington v. Trump*, 847 F.3d 1151, 1166-67 (9th Cir. 2017) (per curiam) (rejecting request to narrow a temporary restraining order in a stay posture where "the Government has not proposed a workable alternative form of the TRO"). The government respectfully disagrees with the Court's assessment in those cases. But, assuming that those cases were properly decided on their own terms, they are of no aid to plaintiffs here.

Respecting the basic principle that injunctive relief should be tailored to provide a plaintiff with complete relief likewise fosters respect for coordinate courts in the federal system and preserves the class-action mechanism. The same issue presented here is being considered by a district court in another circuit. *See*

*City of Chelsea v. Trump*, No. 17-10214 (D. Mass. filed Feb. 8, 2017). Plaintiffs believe that a district court in California can preempt rulings in other circuits—but only if it rules in their favor. No one suggests that a ruling in the federal government's favor in the Northern District of California would be determinative in a suit brought by Chelsea in the District of Massachusetts. Plaintiffs' theory of district court authority provides challengers to government action with all the benefits of a class action without any of the obligations or burdens, including assurance that other parties will be bound by an adverse judgment.

San Francisco cites an out-of-circuit district court opinion to claim that this result is not anomalous because courts sometimes conclude that class certification is unnecessary in light of the relief obtained by a single plaintiff. San Francisco Br. 31-32 (citing *M.R. v. Board of Sch. Comm'rs of Mobile Cty.*, 286 F.R.D. 510, 518 & n.11 (S.D. Ala. 2012)). But this argument, too, illustrates plaintiffs' failure to come to grips with the basic rule that injunctive relief must be tailored to remedy the harm asserted by the aggrieved party. As the rule implies, injunctive relief may sometimes benefit third parties, *Bresgal*, 843 F.2d at 1170-71, and in some cases the relief a party receives benefits others in a way that makes further class litigation unnecessary. But that result obtains because the scope of the injunction "*necessary to give prevailing parties the relief to which they are entitled*," *id.* at 1171, encompasses all the relief that a class would have sought, not because district courts hold a roving commission to circumvent the class-action mechanism. Because plaintiffs here

have not explained—and cannot explain—why a nationwide injunction is necessary to remedy their harms, the district court's injunction is insupportably overbroad.

Plaintiffs make no attempt to argue that a nationwide injunction is necessary to provide them with full relief from the harms they have alleged or that a narrower injunction is not feasible. Quite the contrary: Santa Clara describes a narrower injunction that would fully protect its interests, contending that any injunction must extend to the state of California because some of Santa Clara's federal funds pass through the state. Santa Clara Br. 42 n.23. At a minimum, it would be necessary to tailor a scope no broader than the plaintiffs themselves believe necessary to protect their interests.

Plaintiffs' position also disregards the Supreme Court's holding "that nonmutual offensive collateral estoppel simply does not apply against the government." *United States v. Mendoza*, 464 U.S. 154, 162 (1984). Allowing nonparties to benefit from another party's improperly broad injunction renders meaningless the Supreme Court's holding in *Mendoza*. A nationwide injunction, like nonmutual collateral estoppel, "substantially thwart[s] the development of important questions of law by freezing the first final decision rendered on a particular legal issue," and "deprives [the Supreme] Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari." *Id.* at 160.

Santa Clara suggests that these concerns can be discounted because other litigation could continue despite the permanent injunction. Santa Clara Br. 49. It is unclear why district courts across the country should determine whether to grant relief when their decisions will have no practical effect.

San Francisco urges that it is irrelevant that the decision here may preempt other legal challenges because the issue presented is one of law that does not require factual development. San Francisco Br. 34-35. Neither the Supreme Court nor this Court has ever suggested that *Mendoza* is inapplicable because litigation turns on an issue of law.

# CONCLUSION

The judgment of the district court should be reversed.

Respectfully submitted,

CHAD A. READLER
  *Acting Assistant Attorney General*

ALEX G. TSE
  *Acting United States Attorney*


MARK B. STERN
DANIEL TENNY

*s/ Brad Hinshelwood*
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7256*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-7823*
  *bradley.a.hinshelwood@usdoj.gov*

FEBRUARY 2018

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,292 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2013 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Brad Hinshelwood*
Brad Hinshelwood

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2018, I electronically filed the foregoing

brief with the Clerk of the Court for the United States Court of Appeals for the Ninth

Circuit by using the appellate CM/ECF system. Participants in the case are registered

CM/ECF users, and service will be accomplished by the appellate CM/ECF system.


*s/ Brad Hinshelwood*
Brad Hinshelwood